## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 06-55-GMS |
| RICHARD ADJEI, a/k/a JOHNSON AGYEMAN, | : |
| Defendant. | : |

### MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorney, Beth Moskow-Schnoll, Assistant United States Attorney for the District of Delaware, and on behalf of and with the consent and knowledge of Colm F. Connolly, United States Attorney for the District of Delaware, and the defendant, Richard Adjei, by and through his attorney, Mark Greenberg, Esquire, the following agreement is hereby entered into by the respective parties:

1.  The defendant, Richard Adjei, agrees to waive indictment and plead guilty to a four count Information. Count One charges the defendant with bank fraud in violation of 18 U.S.C. § 1344 which carries a maximum penalty of 30 years imprisonment, 5 years supervised release, a $1,000,000 fine and a $100 special assessment. Count Two charges the defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A. This statute is a penalty enhancement that adds two mandatory, consecutive years to any sentence received for a conviction for certain enumerated offenses, including bank fraud. The penalties for the offense also include up to a $250,000 fine and a $100 special assessment. Count Three charges the

defendant with engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. The maximum penalties for this offense are 10 years imprisonment, 3 years supervised release, a fine of $250,000 or not more than twice the amount of the criminally derived property involved in the transaction (whichever is greater), and a $100 special assessment. Count Four charges the defendant with making false, fictitious, or fraudulent claims to an agency or department of the United States in violation of 18 U.S.C. § 287. The maximum penalties for this offense are 5 years imprisonment, 3 years supervised release, a $250,000 fine, and a $100 special assessment.

      2.      The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Count One of the Information: (a) that on or about the dates set forth in the Indictment, there was a scheme to defraud a bank; (b) that the defendant executed the scheme with the intent to defraud the bank; and (c) that at the time of the execution of the scheme, the bank had its deposits insured by the Federal Deposit Insurance Corporation or FDIC. The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Count Two of the Information: (a) the defendant knowingly used, without lawful authority, a means of identification of another person; and (b) the defendant used the means of identification of another person during and in relation to bank fraud. The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Count Three of the Information: (a) the defendant engaged in a monetary transaction in or affecting interstate commerce; (b) the monetary transaction involved criminally derived property in a value greater than $10,000; (c) the property was derived from specified unlawful activity; (d) the defendant acted knowingly, that is,

with knowledge that the transaction involved proceeds of a criminal offense; and (e) the transaction took place in the United States. The defendant understands that if there were a trial, the Government would have to prove the following elements with respect to Count Four of the Information: (a) the defendant made or presented a claim to a department or agency of the United States for money or for property; (b) the claim was false, fictitious or fraudulent; and (c) the defendant knew at the time that the claim was false, fictitious or fraudulent.

    3.    The defendant knowingly, voluntarily, and intelligently admits the following facts: (a) from in or around November 2005, through in or around April 2006, the defendant filed 175 false, fictitious and fraudulent tax returns with the Internal Revenue Service seeking refunds from the United States Treasury; (b) the tax returns were false, fictitious and fraudulent both because the defendant filed the returns using the names and Social Security Account Numbers of individuals without their consent and knowledge and because the returns contained false and fictitious information; (c) between on or about January 10, 2006, and on or about March 6, 2006, the defendant, operating as Auskwat Services, submitted sixty-six returns and corresponding refund anticipation loan (RAL) applications to HSBC Bank, a federally insured financial institution, using the names and Social Security Account Numbers of individuals without their knowledge or permission; (d) between on or about January 13, 2006, and on or about February 4, 2006, the defendant, operating as Auskwat Services, submitted thirty-two returns and corresponding RAL applications to Bank One, a federally insured financial institution, using the names and Social Security Account Numbers of individuals without their knowledge or permission; (e) between on or about January 19, 2006, and on or about January 21, 2006, the defendant, operating as Auskwat Services, submitted twenty-two returns and corresponding RAL

applications to SBB&T, a federally insured financial institution, using the names and Social Security Account Numbers of individuals without their knowledge or permission; (f) the defendant received the proceeds of the RALs issued by HSBC, Bank One, and SBB&T to the purported clients of Auskwat and did not pay the proceeds to the taxpayers listed on the fraudulent returns; and (g) on or about March 21, 2006, the defendant purchased a 2004 Toyota 4Runner from a car dealership in New Hampshire using more than $10,000 of money that he had derived from his fraudulent tax refund and bank fraud scheme.

4. The defendant understands that at sentencing the District Court must consider the United States Sentencing Guidelines and take them into account in exercising its discretion to determine the appropriate sentence and must also consider the other factors bearing on an appropriate sentence pursuant to 18 U.S.C. § 3553(a). The parties hereby agree that U.S.S.G. §§ 2B1.1 and 2S1.1 are applicable to the offenses to which the defendant is pleading guilty and further agree and stipulate that, including relevant conduct pursuant to U.S.S.G. § 1B1.3, the defendant filed tax returns with the Internal Revenue Service seeking $1,057,496 in fraudulent refunds. The defendant further understands that the Government likely will recommend that the Court impose a sentence consistent with the sentencing range set forth by the sentencing guidelines.

5. The defendant agrees to pay the special assessments at the time of sentencing. Should he fail to do so, the defendant agrees to voluntarily enter the United States Bureau of Prisons' administered program known as the Inmate Financial Responsibility Program through which the Bureau of Prisons will collect a portion of the defendant's prison salary and apply it on the defendant's behalf to the payment of the outstanding debt ordered.

6. Provided that the United States Attorney does not subsequently learn of conduct by the defendant inconsistent with acceptance of responsibility, at sentencing, the United States agrees to move for a three level reduction under USSG §3E1.1(b) based on the defendant's conduct to date.

7. At the time of sentencing, the Government agrees to move to dismiss the Indictment that was returned against the defendant on May 11, 2006.

8. The parties reserve the right to defend the probation officer's findings at the sentencing hearing and to defend the sentencing court's rulings at any subsequent proceedings, including any appeal. The parties realize that the Court is not bound by any stipulations reached by the parties. The defendant understands and agrees that if the Court decides not to follow any stipulation or recommendation in this Memorandum of Plea Agreement, or if the defendant does not receive the benefits he expects from any such stipulation or recommendation, the defendant may not withdraw his guilty plea.

9. The defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past two years, or in which the defendant has or had during that time any financial interest. The defendant agrees to take all steps as requested by the United States to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. The defendant agrees to undergo any polygraph examination the United States may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years. Defendant agrees to forfeit to the United States all of the defendant's interests in any asset of a value of more than $1,000 that, within the last two years, the defendant owned, or in which the defendant

maintained an interest, the ownership of which the defendant fails to disclose to the United States in accordance with this agreement.

10. The defendant agrees to forfeit all interests in any fraud related asset that the defendant currently owns, has previously owned or over which the defendant currently, or has in the past, exercised control, directly or indirectly, and any property the defendant has transferred, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense, including but not limited to the following specific property:

(a) $8,351 in U. S. currency that was seized during the search of his home on April 13, 2006;

(b) the contents of WSFS Bank checking account number 208368332; and

(c) the contents of WSFS Bank savings account number 497145860.

Defendant warrants that defendant is the sole owner of all of the property listed above, and agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

11. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any

failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

12. The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct.

13. The defendant agrees to cooperate fully and truthfully with the Government as follows:

    a. Defendant agrees to provide truthful, complete and accurate information and testimony. The defendant understands that if he testifies untruthfully in any material way he can be prosecuted for perjury. The defendant understands that if his prior statements to the Government are untruthful in any material way this agreement is violated and becomes void.

    b. Defendant agrees to provide all information concerning his knowledge of, and participation in, the subject matter of the Indictment and/or Information of which he has knowledge.

    c. Defendant agrees that he will not falsely implicate any person or entity, and he will not protect any person or entity through false information or omission.

    d. Defendant agrees to testify as a witness before any Grand Jury, hearing, or trial when called upon to do so by the Government.

   e. Defendant agrees to hold himself reasonably available for any interviews as the Government may require.

   f. Defendant agrees to provide all documents or other items under his control or which may come under his control which may pertain to any crime.

   g. Defendant understands that his cooperation shall be provided to any law enforcement agency as requested by counsel for the Government.

   h. To enable the Court to have the benefit of all relevant sentencing information, the defendant waives any rights to a prompt sentencing, and will request that sentencing be postponed until his cooperation is complete.

   i. Defendant agrees and understands that this agreement requires that his cooperation may continue even after the time that the defendant is sentenced. Failure to continue to cooperate after sentence is imposed shall be grounds to void this agreement.

   j. Defendant agrees that if the Government determines that the defendant has not provided full and truthful cooperation, or has committed any federal, state, or local crime, other than violations or traffic offenses, between the date of this agreement and his sentencing, or has otherwise violated any other provision of this agreement, the agreement may be voided by the Government and the defendant shall be subject to prosecution for any federal crime which the Government has knowledge including, but not limited to, perjury, obstruction of justice, and the substantive offenses arising from this investigation.

 14. If the Government in its sole discretion determines that the defendant has fulfilled his obligations of cooperation as set forth above, at the time of sentencing, the Government will:

   a. Make the nature and extent of the defendant's cooperation known to the

Court.

    b.  Make a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guideline §5K1.1, 28 U.S.C. §994(n), and 18 U.S.C. §3553(e), only if the Government, in its sole discretion, determines that the defendant has provided substantial and truthful assistance in the investigation or prosecution of another person who has committed an offense. The defendant understands that his debriefing and cooperation have not yet been completed and that a debriefing does not amount to substantial assistance.

    c.  Make whatever sentencing recommendation the Government deems appropriate.

  15.  The defendant's rights under this agreement shall in no way be dependent upon or affected by the outcome of any case in which he may testify.

  16.  It is further agreed by the parties that this Memorandum supersedes all prior promises, representations, and statements of the undersigned parties; that this Memorandum may be modified only in writing signed by all the parties; and that any and all promises, representations and statements made prior to or after this Memorandum are null and void and

/ / / /

have no effect whatsoever, unless they comport with the subsequent written modification requirements of this paragraph.

                                        COLM F. CONNOLLY
                                        United States Attorney

_____      BY:_____
Richard Adjei                                      Beth Moskow-Schnoll
Defendant                                           Assistant United States Attorney

_____
Mark Greenberg
Attorney for Defendant

Dated: November 16, 2006

        **AND NOW**, this ___ day of _____, 2006, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.

                                          _____
                                          HONORABLE GREGORY M. SLEET
                                          United States District Court Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 06-55-GMS |
| RICHARD ADJEI, a/k/a JOHNSON AGYEMAN, | : | |
| Defendant. | : | |

## INFORMATION

The United States Attorney for the District of Delaware charges that:

### COUNT I

**Introduction**

1. At all times relevant to this Indictment, HSBC Bank, JP Morgan Chase (Bank One), and Santa Barbara Bank & Trust (SBB&T) were federally insured financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation or FDIC.

2. A refund anticipation loan, hereinafter referred to as a "RAL", is a short term loan that a financial institution issues, for a fee, to a person anticipating a tax refund. The loan is for the amount of the tax refund due the taxpayer less fees. In obtaining a RAL, the taxpayer directs the Internal Revenue Service (IRS) to pay the anticipated refund over to the financial institution issuing the RAL, thereby repaying the loan. At all times relevant to this Indictment, HSBC Bank, Bank One, and SBB&T issued RALs.

3. In order to become an authorized electronic filer of income tax returns, one must submit to the IRS Form 8633, Application to Participate in the IRS E-File Program. Upon

approval of the application, the requestor becomes an Electronic Return Originator ("ERO") and is assigned an Electronic Filing Identification Number ("EFIN") which the IRS uses to identify and monitor ERO activity. On or about August 8, 2005, the IRS received a Form 8633 from an electronic return preparer named Auskwat Services (Auskwat). The IRS approved the application and assigned Auskwat an EFIN, thereby permitting Auskwat to submit electronic returns to the IRS. Unbeknownst to the IRS, the defendant, Richard Adjei, a/k/a Johnson Agyeman, was Auskwat.

4. Between in or around January 2006, and in or around April 2006, the defendant, operating as Auskwat, filed electronically with the IRS 149 tax returns for the 2005 tax year. In filing the returns, the defendant used the names and Social Security Account Numbers of individuals without their knowledge and/or permission. Virtually all of the persons whose identities the defendant used had been patients of doctors associated with a hospital located near Milwaukee, Wisconsin.

5. The defendant, operating as Auskwat and using the EFIN assigned to Auskwat by the IRS, enrolled in HSBC Bank's RAL program. Between on or about January 10, 2006, and on or about March 6, 2006, the defendant, operating as Auskwat, submitted sixty-six returns and corresponding RAL applications to HSBC Bank using the names and Social Security Account Numbers of individuals without their knowledge or permission. The total refunds sought amounted to $183,051.

6. The defendant, operating as Auskwat and using the EFIN assigned to Auskwat by the IRS, enrolled in Bank One's RAL program. Between on or about January 13, 2006, and on or about February 4, 2006, the defendant, as Auskwat, submitted thirty-two returns and

corresponding RAL applications to Bank One using the names and Social Security Account Numbers of individuals without their knowledge or permission. The total amount of refunds claimed on these returns was $87,046. Bank One allowed Auskwat to print Bank One cashier's checks for payment of the RALs. Auskwat directed Bank One to direct deposit any monies owed to it into an account held in the defendant's name.

7. The defendant, operating as Auskwat and using the EFIN assigned to Auskwat by the IRS, enrolled in SBB&T's RAL program. SBB&T allowed Auskwat to print SBB&T cashier's checks for payment of the RALs, and, on or about December 27, 2005, SBB&T mailed thirteen packages containing blank check stock to Auskwat at the defendant's address in Bear, Delaware. Between on or about January 19, 2006, and on or about January 21, 2006, the defendant, as Auskwat, submitted twenty-two returns and corresponding RAL applications to SBB&T using the names and Social Security Account Numbers of individuals without their knowledge or permission. The total amount of refunds claimed on these returns was $77,048.

8. The defendant, Richard Adjei, a/k/a Johnson Agyeman, received the proceeds of the RALs issued by HSBC, Bank One, and SBB&T to the purported clients of Auskwat and did not pay the proceeds to the taxpayers listed on the fraudulent returns.

**Charging Paragraph**

9. From on or about August 8, 2005, until in or around April 2006, in the State and District of Delaware, the defendant, Richard Adjei, a/k/a Johnson Agyeman, did knowingly execute and attempt to execute a scheme and artifice to defraud HSBC Bank, JP Morgan Chase (Bank One), and Santa Barbara Bank & Trust, federally insured financial institutions, in that the defendant was engaged in a scheme and artifice to defraud as described in paragraphs 1 through 8

above, incorporated herein by reference, and, in execution of that scheme, on or about January 13, 2006, the defendant, operating as Auskwat Services, filed a fraudulent tax return and corresponding RAL application using the name and Social Security Account Number of RK without RK's knowledge or permission, and based on this application, Bank One issued a RAL on or about February 1, 2006, all in violation of Title 18, United States Code, Section 1344.

### COUNT II

10.     From in or around November 2005, through in or around April 2006, in the State and District of Delaware, Richard Adjei, a/k/a Johnson Agyeman, defendant herein, did knowingly use, without lawful authority, means of identification of at least 149 persons, to wit, their names and Social Security Account Numbers, during and in relation to a violation of the bank fraud statute, 18 U.S.C. § 1344, as described in paragraphs 1 through 8 above, incorporated herein by reference, all in violation of Title 18, United States Code, Section 1028A.

### COUNT III

11.     On or about March 21, 2006, in the District of Delaware, Richard Adjei, a/k/a Johnson Agyeman, defendant herein, did knowingly engage and attempt to engage in a monetary transaction, that is, the purchase of a 2004 Toyota 4Runner from a car dealership in New Hampshire which was then engaged in, and the activities of which affected, interstate commerce, using criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, bank fraud, as more fully set forth in Count One of the Indictment, incorporated herein by reference, in violation of 18 U.S.C. §1344, all in violation of 18 U.S.C. §1957.

## COUNT IV

12. From in or around November 2005, through in or around April 2006, in the District of Delaware, Richard Adjei, a/k/a Johnson Agyeman, defendant herein, made and presented to the Internal Revenue Service 175 claims upon the United States Treasury, that is, tax returns seeking refunds, knowing that the claims were fraudulent and fictitious in that the defendant used the names and Social Security Account Numbers of individuals without their knowledge and/or permission on the tax returns he filed, and the defendant placed fictitious financial information on the tax returns, all in violation of 18 U.S.C. § 287.

## Notice of Forfeiture

### Count I

Upon conviction of the offense alleged in Count I of this Indictment, defendant Richard Adjei, a/k/a Johnson Agyeman, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation, including but not limited to:

a. **Money Judgment** - a sum of money equal to $310,183 in United States currency, representing the amount of proceeds obtained as a result of the offense, to wit, a violation of 18 U.S.C. § 1344, bank fraud.

b. **Personal Property** - (1) a 2004 Toyota 4Runner, VIN no. JTEBT14R548009455; (2) a 2004 Volkswagen Touareg, VIN no. WVGCM67L74D006263; and (3) a 2001 Lexus RX 300, VIN no. JTJHF10U010182744.

**Substitute Assets**

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and with respect to Count I of this Indictment, defendant Richard Adjei, a/k/a Johnson Agyeman, shall forfeit substitute property up to the value of $310,183, if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

**Count III**

Upon conviction of the offense alleged in Count III of this Indictment, defendant Richard Adjei, a/k/a Johnson Agyeman, shall forfeit the following property to the United States pursuant to 18 U.S.C. § 982(a)(1):

a.  All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations. With respect to Count III, such property includes, but is not limited to a 2004 Toyota 4Runner, VIN no. JTEBT14R548009455.

  b. A sum of money equal to the total amount of money involved in the offense alleged in Count III for which the defendant is convicted: $14,428.

                COLM F. CONNOLLY
                United States Attorney


            By: _____
                Beth Moskow-Schnoll
                Assistant United States Attorney


Dated: November 16, 2006